**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| KENNETH LUCERO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 13-cv-01036 JFM |
| WAYNE EARLY, *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

Defendants, the Mayor and City Council of Baltimore and the Baltimore Police Department, by their undersigned counsel and pursuant to Fed.R.Civ.P. 12(b)(6)(2014), respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by Plaintiff, Kenneth Lucero, for failure to state a claim on which relief may be granted.

I.   INTRODUCTION

The above captioned action is a civil rights claim under 42 U.S.C. §1983 ("§1983") brought by Plaintiff, Kenneth Lucero ("Plaintiff" or "Mr. Lucero") against Defendants, the Mayor & City Council of Baltimore ("MCC" or "the City"), the Baltimore Police Department ("BPD"), and BPD Officer Wayne Early ("Officer Early").  *See ECF Paper No. 1, Complaint ¶¶ 1, 4-7.*  The gravamen of Mr. Lucero's § 1983 *Monell* claims[1] is that the City, BPD and Officer Early violated his right under the First, Fourth and Fourteenth Amendment of the U.S. Constitution when they enforced a public safety protocol against him during the Spring 2010

---

[1] A "§1983 *Monell* claim" claim refers to the well-established Supreme Court precedent authorizing civil rights lawsuits under §1983 against municipalities, where an official policy or custom of the municipality causes a constitutional injury.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Ringling Bros. Circus ("the Circus") at the First Mariner Arena ("the Arena") in Baltimore, Maryland.   *See ECF Paper No. 1, Complaint ¶¶ 10-28.*

The constitutionality of the public safety protocol has been litigated before this Court as well as the Fourth Circuit.   *See Ross v. Early*, 746 F.3d 546 (4th Cir. 2014).   The public safety protocol regulated protected activity on the sidewalks surrounding the Arena during the Circus shows because of severe pedestrian and automobile traffic during these events.   *See Ross*, 746 F.3d at 550.   Mr. Lucero is an animal rights activist and a Circus protestor who challenges: (1) the public safety protocol itself (facially); (2) the public safety protocol  as applied to him (and other Circus protestors); and (3) Officer Early's alleged discriminatory enforcement of the public safety protocol against him in April of 2010, including Officer Early's alleged arrest of Mr. Lucero on April 17, 2010.   *ECF paper No. 1, Complaint ¶¶ 10-28.*

BPD and the City have filed a motion to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6)("Rule 12(b)(6)").   The Court should grant their Rule 12(b)(6) motion for the following reasons:

• The Complaint fails to aver sufficient facts for a §1983 *Monell* claim against the BPD and the City, as it fails to show that either they deliberately chose an unconstitutional policy, or that they were deliberately indifferent to Mr. Lucero's First, Fourth and Fourteenth Amendment rights;

• Similarly, the Complaint also fails to allege sufficient facts under *Monell* to show that the BPD and City officials with "final policy making authority" established the public safety protocol;

- Any facial challenge fails under the First Amendment because there are no facts showing how the protocol is invalid under all circumstances, how it lacks a plainly legitimate sweep, or how it is otherwise overbroad;

- The Complaint also fails allege sufficient facts to demonstrate that the public safety protocol was content or view point based;

- The Fourth Circuit has already held that the public safety protocol passes intermediate judicial scrutiny under the First Amendment of the Constitution;

- Any §1983 *Monell* claim under the Fourth Amendment fails because Mr. Lucero admits violating the public safety protocol and thus, any BPD Officer (including Officer Early) who knew that Mr. Lucero was violating the protocol had probable cause to arrest him;

- Mr. Lucero has no constitutional right under the First Amendment to avoid an arrest, where his arrest is based upon probable cause under the Fourth Amendment; and

- All of Mr. Lucero's state law claims fail against BPD on the grounds of sovereign immunity.

II.   STATEMENT OF FACTS

The facts that are material to the Rule 12(b)(6) motion are contained in the Complaint itself. *See ECF Paper No. 1, Complaint.*  Mr. Lucero is an animal rights activist and protestor of the Circus. *See Id., ¶¶ 23-24.*  The Complaint alleges that "prior to the 2004 Circus, the City and the BPD jointly formulated a *Monell* policy ("Policy") restricting the use of the Sidewalk by those engaged in protest activities, including leafleting, at the Circus. *Id. ¶ 14.*  The Complaint describes the public safety protocol as the following: "The Policy prohibits Circus protesters from using the approximately 15 feet of Sidewalk abutting the north side (Baltimore Street) of

the Arena; all of the north half (the half containing the entrance) of the Howard Street Sidewalk on the west; and all of the Hopkins Place Plaza on the east." *Id. ¶ 15*.

Without any factual support, the Complaint asserts that BPD formulated the public safety protocol to apply only during the Circus, and that the protocol was viewpoint based, *i.e.*, the policy was only enforced against those who opposed the Circus. *Id. ¶¶ 16-18*. In support of this assertion, the Complaint alleges that Officer Early had a history of "content based" enforcement dating prior to 2004 (before the protocol was enacted). *Id. ¶ 20*.

The Complaint goes alleges that the protocol was enforced against Mr. Lucero on April 8, 9, and 10 of 2010 during the Circus performances at the Arena, while Mr. Lucero wanted to leaflet in the restricted areas around the Arena, but chose not to do so. *Id. ¶ 23*. In other words, Mr. Lucero was aware of the public safety protocol because he was allegedly informed by Officer Early and other BPD Officers of the protocol's existence. *Id. ¶ 23*.

Significantly, Mr. Lucero admits that on April 17, 2010, he violated the public safety protocol, and that Officer Early arrested him on that date as a result of his disobedience. *Id. ¶ 24*. The Complaint alleges that Mr. Lucero was brought to a booking center (presumably the Baltimore Central Booking and Intake Center), where he was released without being charged after several hours. *Id. ¶ 24*.

The Complaint, however, is devoid of important factual details concerning the formulation of the public safety protocol, including: (1) who within BPD and the City formulated the protocol; (2) the policy making authority of the BPD officials who approved the protocol; (3) the final policymaking the City officials who formulated and approved the protocol; (4) how the final policymakers in the BPD and City who allegedly formulated the protocol knew and understood the it was facially unconstitutional, or that is was unconstitutional as applied to Mr.

4

Lucero and other Circus protestors; and (5) how BPD and City final policymaking officials knew of the alleged discriminatory enforcement of the public safety protocol against Circus protestors by Officer Early and other BPD officers. *See ECF Paper No. 1, Complaint ¶¶ 10-*28.

III.   STANDARD OF REVIEW

The standard of review for Defendants' Rule 12(b)(6) motion to dismiss is well-settled. A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the initial pleading. *See e.g., E. I. du Pont de Nemours & Co. v. Kolon Indus*., 637 F.3d 435, 440 (4th Cir. 2011); *Glassman v. Arlington County*, 628 F.3d 140, 145 (4th Cir. 2010); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *cert. granted*, ___ U.S. ___, 2011 U.S. LEXIS 4972 (2011); *Francis v. Giacomelli*, 588 F.3d 186, 190 (4th Cir. 2009).

The Supreme Court has specifically instructed lower federal courts to use a two-pronged approach in analyzing the sufficiency of a pleading under Fed. R. Civ. Proc. 8 ("Rule 8"): (1) the principle that the court should accept the truth of factual allegations is inapplicable to conclusory allegations; and (2) a complaint will only survive a Rule 12(b)(6) motion where it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *see also Bell Atl. v. Twombly*, 550 U.S. 544, 555-556 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Giacomelli*, 588 F.3d at 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

Following the Supreme Court's instructions under the first prong of the Rule 8 test, the Fourth Circuit has found that "we need not accept the legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Glassman v. Arlington County Virginia*, 628 F.3d 140, 146 (4th Cir. 2010) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citation omitted)). "This approach

recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Giacomelli*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Once a pleading is stripped of its allegations that are not entitled to truth, the second prong requires the lower federal court to determine if the remaining factual allegations state a plausible claim for relief. *See Iqbal* 556 U.S. at 677-683; *Twombly*, 550 U.S. at 555-570; *Glassman*, 628 F.3d at 145-150; *Giacomelli*, 588 F.3d at 194-197. Thus, where the well-pled facts of a pleading "… do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; *Giacomelli*, 588 F.3d at 193; *Glassman*, 628 F.3d at 145 (citing *Twombly*, 550 U.S. at 557). In sum, the Complaint cannot survive Defendants' Rule 12(b)(6) motion to dismiss if it contains nothing more than "…an unadorned, the-defendant-unlawfully-harmed-me accusation" that is insufficient to state *a plausible* claim for relief. *See Iqbal,* 556 U.S. at 678; *Giacomelli*, 588 F.3d at 193.

IV.   <u>ARGUMENT</u>

> **I.    THE COMPLAINT FAILS TO PLAUSIBLE STATE A §1983 *MONELL* CLAIM AGAINST BPD AND THE CITY BECAUSE IT DOES NOT SUFFICIENTLY ALLEGE THAT THEY EITHER "DELIBERATELY CHOSE" AN UNCONSTITUTIONAL POLICY, OR THAT THEY WERE OTHERWISE "DELIBERATELY INDIFFERENT" TO PLAINTIFF'S FIRST, FOURTH AND FOURTEENTH AMENDMENT RIGHTS.**

As an initial matter, Count II and Count III of the Complaint should be dismissed because Plaintiff fails to sufficiently allege facts to support a §1983 *Monell* claim against the City or BPD. Any viable §1983 *Monell* claim has two elements: (1) the municipality had an

unconstitutional "policy or custom"; and (2) the "policy or custom" caused a violation of the plaintiff's constitutional rights, *i.e.*, the unconstitutional custom or policy was "the moving force" behind the violation of the plaintiff's constitutional rights. *See e.g., Connick v. Thompson*, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011); *Bd. of Comm'nrs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987); *Milligan v. Newport News,* 743 F.2d 227, 229 (4th Cir. 1984); *Lee v. O'Malley*, 533 F.Supp.2d 548, 553 (D. Md. 2007).

A party's burden to prove the "moving force" element of a §1983 *Monell* claim is a high hurdle, as he or she must allege sufficient facts to show that the municipality either knowingly selected an unconstitutional policy, or that it was "deliberately indifferent" to his or her constitutional rights. *See Connick*, 131 S.Ct. at 1359; *Brown*, 520 U.S. at 411; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); s*ee also Riddick v. School Bd. of City of Portsmouth*, 238 F.3d 518, 524 (4th Cir. 2000); *Lee v. O'Malley*, 533 F.Supp.2d at 553. The deliberate choice or deliberate indifference standard is an extremely high basis of fault, *i.e.*, mere negligence and/or even gross negligence are *never* insufficient to meet the standard. *See Connick* 131 S.Ct. at 1160 ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.")(citation omitted); *Brown*, 520 U.S. at 407 (a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences… A showing of simple or even heightened negligence will not suffice.); *Riddick*,

238 F.3d at 524 ("A municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality. Rather, 'the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.'")(citation omitted)(emphasis in original).

Thus, it is completely appropriate for the Court to grant a Rule 12(b)(6) motion to dismiss where a pleading has only conclusory allegations of an unconstitutional policy or custom, or where the pleading has insufficient factual allegations that the municipality either deliberately chose an unconstitutional policy, or was otherwise "deliberately indifferent" to violations of a party's constitutional rights.  *See Lee v. O'Malley*, 533 F.Supp.2d at 553 (granting BPD Rule 12(b)(6) motion where complaint only had conclusory allegations that arrest was the result of an unconstitutional policy or custom).

Counts II and III consist of bare allegations without factual enhancement. In Count II, Plaintiff alleges that the policy was the "moving force behind and proximately caused the violation" and that "[a]s a direct and proximate result of the Policy" he "suffered a deprivation of constitutional rights." *ECF Paper No. 1, Complaint. ¶¶ 35 & 36*. In Count III, Plaintiff alleges that he "suffered a deprivation of constitutional rights" as a "direct and proximate cause of the Policy enforcement." *ECF Paper No. 1, Complaint. ¶ 42*. These allegations are legal conclusions couched as facts.

Rather, the law requires Mr. Lucero to plead *facts* which state a plausible claim for relief. Although Plaintiff has used certain buzzwords, such as "moving force" and "custom," the Complaint is devoid of the factual enhancement required to survive a Rule 12(b)(6) motion. Plaintiff has not pled any *facts* to show that BPD or the City were deliberately indifferent to a risk of First, Fourth and Fourteenth Amendment violations surrounding the Circus,  or that they

deliberately chose a facially unconstitutional policy under the First Amendment.  In other words, Plaintiff has not pled any *facts* to show that BPD and the City knew that the policy was facially unconstitutional, or was unconstitutional as applied to Mr. Lucero.

Indeed, as shown in more detail below, the opposite is true, *i.e.*, the policy is facially constitutional under intermediate judicial scrutiny.  Because the case law requires such a showing, Counts II and III of Plaintiff's Complaint should be dismissed.

To the extent that Mr. Lucero seeks to hold the BPD liable for the §1983 claim asserted against Officer Early, such a claim also fails. Plaintiff alleges that "Defendant Early and other BPD officers regularly declined to enforce the Policy against persons who were openly leafleting other issues, but consistently and regularly enforced it against anti-Circus leafletters." *ECF Paper No. 1, Complaint. ¶ 40*.    Assuming that this allegation were true, an individual officer's personal decision to enforce a neutral policy in a discriminatory manner does not subject the BPD to §1983 liability.

To the contrary, the Complaint must contain *facts* showing that BPD was aware of the discriminatory enforcement of the policy, that the discriminatory enforcement of the policy was a widespread practice or custom, that BPD drew the inference that BPD Officers (including Officer Early) was violating the First, Fourth and Fourteenth Amendment rights of Circus protestors, and that BPD did nothing about it. In short, the Complaint falls far short of stating a §1983 *Monell* claim.

**II.      THE BPD AND THE CITY ARE NOT SUBJECT TO § 1983 *MONELL* LIABILITY BECAUSE THERE ARE NO FACTS IN THE  COMPLAINT SHOWING THAT THE PUBLIC SAFETY PROTOCOL WAS ENACTED BY OFFICIALS WHO POSSESSED "FINAL POLICYMAKING AUTHORITY."**

Second, the Court should dismiss the §1983 *Monell* claims against BPD and the City (Counts II and III), because the Complaint has a fatal, fundamental deficiency, *i.e.*, it fails to allege facts showing that the public safety protocol  was authorized by officials with "final policy making authority" for both BPD and the City.  In order for §1983 *Monell* liability to attach to a municipality, a party must ultimately allege and prove that a municipal official with "final policymaking authority" enacted  an unconstitutional policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).   A "policy" may be attributed to a municipality only if it is directly made by the municipality's governing body or by an agency official having final authority to establish and implement the policy.  *See Lytle, 3*26 F.3d at 471 ("A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority…(citing *Carter,* 164 F.3d at 217)); *Spell*, 824 F.2d at 1386-1387 ("While municipal "policy" is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations… it may also be found in formal or informal *ad hoc* "policy" choices or decisions of municipal officials authorized to make and implement municipal policy" (internal citations omitted)).

The issue of whether an official has "final policymaking authority" is a question of state law.   *See Praprotnik,* 485 U.S. at 124 ("Third, whether a particular official has "final policymaking authority" is a question of state law.")(citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986)); *Lytle*, 326 F.3d at 472.  Indeed, "[t]he identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense." *Praprotnik*, 485 U.S. at 124.

The Commissioner is the only law enforcement official in the BPD who has final policymaking authority for that agency.  PUBLIC LOCAL LAWS OF MARYLAND,  §16-4, in plain and unambiguous language, states the following: "The affairs and operations of the department shall be supervised and directed by a commissioner of police, who shall function as the chief police and executive officer of the department, and be known as the Police Commissioner of Baltimore City." PLL § 16-4. As the Maryland Court of Appeals explained in *Beca v. Baltimore*:

> The **authority of the Police Commissioner of Baltimore City to promulgate rules and regulations** binding upon members of the Department emanates from Chapter 203 of the Laws of Maryland of 1966, now codified as §§ 16-1 through 16-40 of the Code of Public Local Laws of Baltimore City (Everstine 1969). Under § 16-2 the Department is constituted as an agency of the State, although under § 16-8 its operations are funded by the City. The Police Commissioner of Baltimore City is designated as the chief executive officer of the Department by § 16-4 and its 'affairs and operations' are placed under his supervision and direction. Section 16-7 provides, with exceptions not here pertinent, that the Commissioner shall 'be vested with all the powers, rights and privileges attending the responsibility of management, and (he) may exercise the same, where appropriate, **by rule, regulation, order, or other departmental directive which shall be binding on all members of the Department** when duly promulgated.'…

279 Md. 177, 181 (1977) (emphasis added).

Therefore, as a matter of law, the City cannot be liable under *Monell* for actions, policies or customs of the BPD.   The City, including its final policymakers, cannot direct or control the BPD and its final policymaker, the Commissioner. BALT. CITY CHARTER, Art II, § 27 ("[N]o ordinance of the City or Act of any municipal officer shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner."); *Adams v. Balt. Transit Co.*, 203 Md. 295, 311 (1953); *Upshur v. Balt.*, 94 Md. 743, 756 (1902). Accordingly, the City is not susceptible to §1983 *Monell* liability for a policy or custom of BPD because the City has no policymaking authority over the BPD.   *See Chin v. City of Balt.,* 241 F.Supp.2d 546, 549 (D.Md.2003) ("[T]he Baltimore City government does not wield enough control over the

Baltimore Police Department to be subject to liability for the Baltimore Police Department's actions."); *see also Estate of Anderson v. Strohman*, CIV.A. GLR-13-3167, 2014 WL 1153785 (D. Md. Mar. 19, 2014); *Brown v. Balt. Police Dep't,* No. RDB–11–00136, 2011 WL 6415366, at *6 (D.Md. Dec. 21, 2011).

For the same reasons, the reverse principal is also true, the BPD cannot be liable under §1983 and *Monell* for a so-called policy that was developed by a City official.   It is well settled law that, the BPD is an agency of the State of Maryland, and not the City of Baltimore. *See* Public Local Laws of Maryland, Art. 4, § 16-2(a) ("The Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland.").  Time and again, Maryland Courts have affirmed that BPD is a *state* agency for tort liability purposes.  *See Houghton v. Forrest*, 412 Md. 578, 588-589 (2007)("First, municipal official immunity under CJ Section 5–507(b) does not apply because the BCPD was created as a state agency, through an act of the General Assembly, and not as a municipal agency."); *Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 24 (2008) ("This is reflective of the fact that the Baltimore Police Department is not an agency of the City of Baltimore and has not been for some time.") (citations omitted); *Clea v. City of Baltimore*, 312 Md. 662, 668 (1988) ("Unlike other municipal or county police departments which are agencies of the municipality or county, the Baltimore Police Department is a state agency"); *Baltimore Police Dep't v. Cherkes,* 140 Md. App. 282, 312 (2001)("The BCPD is entirely a creature of the General Assembly, as Article 16 of the Code of Public Local Laws of Baltimore City makes plain.   The Court of Appeals' observation in *Clea,* in 1988, that the General Assembly, not the Baltimore City Council, is the legislative body that enacts significant legislation directing the structure and functions of the BCPD, is as true today as it was 13 years ago.").

Although Plaintiff refers to the public safety protocol as a "Policy" throughout his Complaint, Plaintiff does not plead any facts to show that the protocol is a "Policy" established by BPD and City officials with final policy making authority for purposes of §1983 *Monell* liability.   Instead, Plaintiff alleges the following, without offering *any* facts to support his conclusory allegations: (1) the "City and the BPD jointly formulated a *Monell* policy restricting the use of the Sidewalk" (2) the City and the BPD "worked together to formulate" the policy and (3) "The Policy is circulated only to City and BPD policymakers." *ECF Paper No. 1, Complaint ¶¶ 9, 14 & 22*.

Such bare and conclusory allegations which "amount to nothing more than a formulaic recitation of the elements' of a constitutional…claim" cannot withstand a proper Rule 12(b)(6) motion. Put another way, the Complaint does not plead crucial facts concerning the circumstances of the actual formulation of the so-called policy, including who within BPD and City formulated the public safety protocol, and the final policy making authority of these individuals. The absence of these factual details are fatal to Mr. Lucero's §1983 *Monell* claims against BPD and the City.

In short, the Complaint contains insufficient facts to demonstrate §1983 *Monell* liability against the City or BPD.   The Court should grant their respective Rule 12(b)(6) motion to dismiss.

## III.    THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A FIRST AMENDMENT FACIAL CHALLENGE, AS THERE ARE NO FACTS INDICATING HOW THE POLICY IS INVALID, LACKS A PLAINLY LEGITIMATE SWEEP OR IS OVERBROAD.

A plaintiff who mounts a facial challenge to a law has a heavy burden. In order for a facial challenge to be successful, a party must show either: 1) 'that no set of circumstances exists

under which the law would be valid, or that the law lacks any plainly legitimate sweep.'"
*Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council of Balt.,* 721 F.3d 264, 282
(4th Cir. 2013) (alterations omitted)(quoting *United States v. Stevens,* 559 U.S. 460, 472 (2010));
or 2) "show[s] that the law is 'overbroad because a substantial number of its applications are
unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *Id.* (alterations
omitted)(quoting *Stevens*, 559 U.S. at 472, 130 S. Ct. 1577)).

Again, Plaintiff merely sets forth legal conclusions that do not meet the pleading
standards set forth in *Twombly* and *Iqbal*. Plaintiff does not allege any facts to show that the
public safety protocol lacks legitimacy as a whole. Likewise, the Complaint contains no set of
facts showing that the protocol is overbroad in its application. Indeed, Plaintiff cannot allege
such facts because the Fourth Circuit has ruled on the very protocol at issue in this case, and
determined that if the protocol is generally applicable, it is a legitimate time, place and manner
restriction on protected activity in a public forum and passes constitutional muster. *See* Section
IV, *infra*.

### IV.   THE PROTOCOL PASSES INTERMEDIATE JUDICIAL SCRUTINY, AS IT IS GENERALLY APPLICABLE, IT IS NARROWLY TAILORED TO MEET THE SUBSTANTIAL GOVERNMENT INTEREST OF PUBLIC SAFETY AND IT ALLOWS FOR ALTERNATIVE CHANNELS FOR PLAINTIFF'S MESSAGE.

The Fourth Circuit's holding in *Ross v. Early*, 746 F.3d 546 (4th Cir. 2014) is directly
applicable to the case at bar, *i.e.*, the policy withstands intermediate judicial scrutiny under the
First Amendment to the Constitution. *See Id.* at 555-560. In *Ross*, a Circus protestor brought an
action challenging his March 2008 and 2009 arrests for failing to obey BPD Officer Early's
repeated orders to confine his protest activities to the designated area outside the First Marina

Arena in Baltimore. *Id*. at 549. The protest area was defined by the same protocol at issue in the case at bar. *See Id.* 746 F.3d at 549.

The Fourth Circuit explicitly held that the policy passed intermediate judicial scrutiny because it was general applicable, it was narrowly tailored to meet the substantial government interest of preserving public safety during the circus and it left alternative means for the circus protestors to communicate their message about the abuse of animals by the circus. *See Id*. at 555-560. In other words, the Fourth Circuit has found that the protocol is a legitimate time, place and manner restriction under the First Amendment. *Id*. at 560 ("because the Policy's limitation on speech is content neutral, narrowly tailored to achieve a substantial government interest, and allows ample alternative channels for communication, it is a permissible time, place, and manner restriction on speech.").

In his Complaint, Plaintiff alleges that the protocol was created prior to the 2004 circus, was readopted and ratified each year, and was implemented during the 2010 circus. *ECF Paper No. 1, Complaint. ¶¶ 14, 19, 21*. There is no allegation in the Complaint that the policy at issue in the case at bar is different from prior policies. Accordingly, the Fourth Circuit has already decided that the protocol at issue in this case passes intermediate judicial scrutiny under the First Amendment, and this Court may dismiss Count II based upon the reasoning of the Fourth Circuit in *Ross*.

**V.    THE COMPLAINT CONTAINS NO FACTS TO SUPPORT ITS CONCLUSORY ALLEGATIONS THAT THE PROTOCOL WAS VIEWPOINT OR CONTENT BASED, OR THAT IT WAS ENFORCED ON THE BASIS OF VIEWPOINT OR CONTENT.**

Plaintiff's contention that the public safety protocol flies in the face of the Fourth Circuit's holding in *Ross*: "Here, it is undisputed that the Policy regulates protected speech,

applies to public sidewalks that serve as traditional public fora, and is content-neutral in that it may be "justified without reference to the content of the regulated speech." *Ross*, 746 F.3d at 552 (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984)). Indeed, Mr. Lucero is plainly wrong when he suggest that the public safety protocol was content based simply because it was put into place during the Circus, *i.e.*, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."   *McCullen v. Coakley*, 134 S.Ct. 2518, 2531 (2104)(quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also Clark v. Community for Creative Non–Violence*, 468 U.S. at 293.

To the extent Plaintiff alleges that the policy itself is content based, this is patently incorrect. In the Complaint itself, Plaintiff describes the policy as one that "prohibits Circus protestors from using approximately 15 feet of Sidewalk abutting the north side (Baltimore Street) of the Arena; all of the north half (the half containing the entrance) of the Howard Street Sidewalk on the west; and all of the Hopkins Place Plaza on the east." *ECF Paper No. 1, Compl. ¶ 15*. The protocol governs people who protest at the Circus generally. It does not touch on the speaker's viewpoint or the content of the message.

Plaintiff's allegation that the protocol is only enforced at the time of the Circus is also irrelevant. Plaintiff has not pled any facts to show that it was necessary to enforce the protocol at other times, or during other events.  In other words, it is evident that the protocol was in place during the Circus because of the number of people who were exercising their First Amendment rights at this event, as opposed to other events around the Arena.

Plaintiff's allegation that BPD officers "regularly declined to enforce the Policy against persons who were openly leafleting other issues, but consistently and regularly enforced it

against anti-Circus leafletters" fails to state a claim for selective enforcement of the protocol. *ECF Paper No. 1, Compl. ¶ 40*. Plaintiff fails to allege facts showing the presence of similarly situated persons engaging in protected activity from within the restricted areas of the sidewalk on April 8, 9 and 10, 2010. *ECF Paper No. 1, Compl. ¶ 42*. Plaintiff relies on vague non-specific allegations of non-enforcement "During the 2010 Circus, as well as prior Circuses." *ECF Paper No. 1, Compl. ¶ 40*. Plaintiff fails to allege that he was prevented from speaking and at the same time that someone espousing a different viewpoint was permitted to speak. *McCullen*, 134 S. Ct. at 2535 n.4. Plaintiff does not allege any facts to show that people who espoused different views were permitted to engage in protected activity within the restricted area at the time the protocol was enforced against him.

Plaintiff's allegation that the policy is a viewpoint or content based restriction is a legal conclusion unsupported by facts. Animal welfare protestors were not prevented from expressing their viewpoint; instead, due to public safety and traffic flow concerns, protestors were not permitted in certain areas.  In other words, a violation of the policy "depends not on what they say, but simply where they say it."[2] Plaintiff also alleges that "[t]he Policy is enforced by BPD officers in a widespread custom only against those who oppose the circus (as applied by BPD)." *ECF Paper No. 1*, *Compl. ¶ 18*.  Although Plaintiff alleges that the policy was enforced against him, he does not plead any facts to show a "widespread custom." The Complaint must do more than show that Plaintiff has a possible claim for relief. The Complaint must meet the pleading standards set forth in *Iqbal* and *Twombly* and show that he has a plausible claim for relief. These factual inadequacies are fatal to the Complaint.

---

[2]  *See McCullen*, 134 S. Ct. at 2531 (citation and quotation marks omitted).

**VI.    PLAINTIFF'S FOURTH AMENDMENT CLAIM FAILS TO STATE A CLAIM BECAUSE  OFFICER EARLY HAD PROBABLE CAUSE TO ARREST PLAINTIFF.**

The Complaint fails to state a Fourth Amendment claim because Mr. Lucero's arrest appears to be based upon probable cause.  It is now well established law that a §1983 *Monell* or supervisory liability claim is not viable where a municipal employee has not inflicted constitutional harm.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("But this was an action for damages, and neither *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any of the other cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *Waybright v. Frederick County, Md.*, 528 F.3d 199, 203 (4th Cir. 2008)("The § 1983 claim against Jeffrey Coombe is the gateway to all the other § 1983 claims, for supervisors and municipalities cannot be liable under § 1983 without some predicate "constitutional injury at the hands of the individual [state] officer," at least in suits for damages." (citations omitted)).

The Supreme Court has long settled the question of whether police officers can make a warrantless arrest for even minor crimes that are committed in their presence without violating the Fourth Amendment, *i.e.*, the Fourth Amendment authorizes a police officer to make a warrantless arrest under such circumstances.  *See Virginia v. Moore*, 553 U.S. 164, 171 (2008)( "In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable.")(citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)); *see also*, *McDaniel v. Arnold*, 898 F.Supp.2d 809, 827, n. 17 (D. Md. 2012).

This rule permitting law enforcement officers to make warrantless arrests for minor crimes even extends to crimes where state law restricts the officer's ability to arrest (so-called "citation offenses");   *See Virginia v. Moore*, 553 U.S. at 176 ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."); *Atwater*, 532 U.S. at 354 ("There is no dispute that Officer Turek had probable cause to believe that Atwater had committed a crime in his presence. She admits that neither she nor her children were wearing seatbelts, as required by Tex. Transp.Code Ann. § 545.413 (1999). Turek was accordingly authorized (not required, but authorized) to make a custodial arrest without balancing costs and benefits or determining whether or not Atwater's arrest was in some sense necessary."); *McDaniel v. Arnold*, 898 F.Supp.2d at 827, n. 17 ("In general, Maryland law does not authorize a police officer to arrest a motorist for speeding or following too closely, unless additional circumstances are present. *See generally* Md. Code Ann. Transp. § 26–202 (delineating power of arrest for violations of the Maryland Vehicle Law). Rather, such offenses are ordinarily resolved by the issuance of a citation. *See* Transp. § 26–201. Nevertheless, an arrest for speeding or following too closely would not offend the Fourth Amendment.").

Here, it appears that any BPD Officer, including Officer Early,  who arrested Plaintiff on April 17, 2010 was justified under the Fourth Amendment in doing so.  First, Mr. Lucero admits that he was aware of the public safety protocol because he was told of its existence on April 8, 9 and 10 by Officer Early and other BPD Officers.  *ECF Paper No. Compliant, ¶ 23.*  On April 17, 2010, Mr. Lucero decided to disobey the public safety protocol, despite his knowledge of its requirements.  *See Id.* at ¶ 24.   His disobedience resulted in his arrest on that date.  *See Id.*  Thus,

it appears that Officer Early (or any other officer) who knew that Mr. Lucero was in violation of the public safety protocol had probable cause to arrest him for violation of Md. Code Ann., §10-201(c) (failure to obey a lawful order that is intended to preserve the public peace), just as Officer Early had probable cause Mr. Ross in 2007 and 2009 for repeated violation of the same protocol.[3]   Mr. Lucero's Fourth Amendment claim must fail, just as Mr. Ross' Fourth Amendment claims failed.

## VII.   PLAINTIFF DOES NOT HAVE A FIRST AMENDMENT RIGHT TO AVOID AN ARREST THAT IS BASED UPON PROBABLE CAUSE.

Because  Mr. Lucero's Fourth Amendment claim fails, likewise, any First Amendment claim for retaliatory arrest must fail.  The Supreme Court has never recognized a right under the First Amendment to avoid any arrest, where the arrest was proper under the Fourth Amendment. *See Reichle v. Howards*, 132 S.Ct. 2088, 2083 (2012)("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of Howards' arrest.").

The Court may outright dismiss any First Amendment claim based upon Mr. Lucero's alleged wrongful arrest.

## VIII.   ALL OF MR. LUCERO'S STATE LAW CLAIMS AGAINST BPD ARE BARRED BY SOVEREIGN IMMUNITY.

Although it is unclear from the allegation of the Complaint whether Mr. Lucero is asserting his Maryland common law claims for false arrest and state constitutional violations against BPD, nevertheless, his claims would fail, as a matter of law.  As stated earlier, it is now well established BPD is a State agency under Maryland law, and accordingly, it has state

---

[3] *See Ross*, 746 F.3d at 561-562.

sovereign immunity against all tort liability.  *See  Lee v. O'Malley,* 533 F.Supp.2d at 554;

*Baltimore Police Department v. Cherkes*, 140 Md. App. at  313-324.

The remaining state law claims against BPD should be dismissed because they are barred

by sovereign immunity.

V.      <u>CONCLUSION</u>

The Court should grant BPD's and the City's Rule 12(b)(6) motion.


Respectfully submitted,

_____/s/_____
Steven J. Potter
Chief Solicitor
Federal Bar No. 8841
Email: steven.potter@baltimorecity.gov
Ph.: (410) 396-3945
Fax: (410) 547-1025


_____/s/_____
Glenn T. Marrow
Chief Solicitor and Deputy Chief Counsel
Office of Legal Affairs
Federal Bar No. 23731
Email: glenn.marrow@baltimorepolice.org
Ph.: (410) 396-2496
Fax: (410) 396-2126


_____/s/_____
Kara K. Lynch
Federal Bar No. 29351
Assistant City Solicitor
Office of Legal Affairs
Email: kara.lynch@baltimorepolice.org
Ph.: (410) 396-2496
Fax: (410) 396-2126


21

Baltimore City Department of Law
City Hall, Room 01
100 Holliday Street
Baltimore, Maryland 21202

*Attorneys for Defendants*
*The Mayor & City of Council of Baltimore*
*And the Baltimore Police Department*