UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KENNETH LUCERO

    Plaintiff

v.

WAYNE EARLY, *et al.*

    Defendants

Case No.:
**13-cv-01036 (JFM)**

**PLAINTIFF'S REPLY REGARDING MOTION (ECF 38) AND OPPOSITION (ECF 40)**

Kenneth Lucero, Plaintiff, by and through counsel, Sean R. Day, files this reply in support of his motion (ECF 38) and in response to the Defendants' opposition thereto (ECF 40).

## REPLY ARGUMENT

### The Court Is Not Precluded From Clarifying Its Previous Order

The Defendants argue that this Court cannot clarify that it intended to enter final judgment, and re-issue final judgment. They argue that the Fourth Circuit ruled that this Court did not enter final judgment and therefore the issue has been decided. The Fourth Circuit, however, was unable to ascertain this Court's intent, describing the order as "ambiguous regarding its finality" – not because of the order's language (which clearly stated, "[t]his action is dismissed"), but because of surrounding circumstances. Following the rule that final judgment requires a "'clear and unequivocal manifestation . . . that the decision made . . . is the end of the case,'"

(quoting *Reinholdson v. Minnesota*, 346 F.3d 847, 849 (8th Cir. 2003), the Fourth Circuit concluded that ambiguity equals non-finality. The Fourth Circuit did not prevent this Court from clarifying what it intended.[1]

**There is No Just Reason for Delaying Appealable Judgment on the Decided Claims**

There is no just reason for delaying entry of final, appealable judgment on the decided claims.

The Amended Complaint contains five claims. Counts 2 and 3 are against the municipal defendants. Count 1 is a § 1983 claim against Defendant Early for enforcement of the Policy on the basis of content or viewpoint (Am. Compl. ¶ 40.) Counts 4 and 5 are state law claims under common law and the Maryland State Constitution for either enforcing an unconstitutional Policy, or for enforcing a constitutional Policy in an unconstitutional manner. (Am. Compl. ¶¶ 56 and 60.)

The "main event" in this lawsuit is whether the Policy is unconstitutional; the claims against Early, as well as the discriminatory enforcement claim against the BPD, make up the undercard. The constitutionality of the Policy can be determined for or against Lucero as a matter of law, which is how this Court determined the issue. In contrast, the manner-of-enforcement claims, if not resolved by motion to dismiss or by summary judgment, require a fact-based trial.

---

[1] Both Plaintiff's counsel and the clerk's office took the order to be final. Had the Plaintiff waited 31 days then sought to move the case along in this Court, the Defendants surely would have also viewed it as a final judgment.

If the Policy is determined to be **un**constitutional, the only issues that will need to be litigated will be damages and attorney's fees; the discriminatory enforcement claims would become superfluous. If the Policy is determined to be constitutional, then Early, by collateral estoppel, will prevail (and effectively has already prevailed in this Court) on parts of counts 4 and 5 (*i.e.*, that he enforced an unconstitutional policy).

Additionally, if the Court's dismissal of the *Monell* enforcement claim against the BPD is affirmed, two of three defendants (the City and BPD) would be wholly removed from the case. While a manner-of-enforcement trial against Early may still be required, it would not alter the issues that would have been already decided on appeal (Is the Policy constitutional as applied to leafletters? Was there a *Monell* custom of unconstitutional enforcement?). And no trial may be needed at all, as the case would likely be more prone to settlement.

The initial prerequisite that the order "terminate all issues presented in at least one claim," *Rudd Constr. Equipment Co. v. Home Ins. Co.*, 711 F.2d 54, 56 (6th Cir. 1983), has been met.

The factors set forth in *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir.1993), warrant entering judgment under Rule 54(b). The overlap that exists between the adjudicated and unadjudicated claims (whether Early enforced an unconstitutional Policy) has been resolved by this Court and would be resolved on appeal. There is otherwise no factual or legal overlap between the adjudicated and

unadjudicated claims, and there is no overlap of parties.[2] The question of whether the policy was unconstitutionally enforced on the basis of content or viewpoint is neither factually nor legally intertwined with the issue of whether the Policy is constitutional as applied to leafletters, an issue which has been decided by this Court and can be decided by the Fourth Circuit as a matter of law on the existing record.

The need for review will not be mooted by future developments in the case. If Lucero wins his enforcement claims against Early, his claims against the City and BPD will be unresolved, and with substantial additional stakes involved (for instance, liability of the municipal defendants, and attorney's fees on work toward establishing the Policy to be unconstitutional). If Lucero loses his claims against Early, that would not resolve the primary issue of whether the Policy is unconstitutional.

If decided on appeal, there is no reason why the issue of the constitutionality of the Policy as applied to leafletters would arise again or be questioned with new facts. The Defendants claim that it could happen, but shed no light on how it would be possible. Opp. p. 16. The factual record necessary to decide the legal issues has been more than fully developed in *Ross*.

---

[2]     With one exception: if this Court's dismissal of the *Monell* enforcement claim against the BPD is **reversed**, there is overlap between the discriminatory enforcement claims against Early and those against the BPD. However, that favors granting 54(b) judgment, as a post-appeal trial for discriminatory enforcement against the BPD would look a lot like a trial for discriminatory enforcement against Early that would have already occurred. While a piecemeal approach to appeals is disfavored, the court's interest in avoiding a piecemeal approach at the trial level is a consideration under Rule 54(b). *Gas-A-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973).

Plaintiff's Reply regarding Motion (ECF 38) and Opposition (ECF 40) • 13-cv-1036 JFM

Page 4 of 7

There are no relevant set-offs to consider.

Additionally, equities and efficiencies favor judgment under Rule 54(b). The parties have already prepared an appendix and fully briefed all the substantive issues before the Fourth Circuit, where this case was pending for a year before being sent back due to the judgment's ambiguity. The parties can efficiently repeat the process.

**Reconsideration**

The Defendants argue that "handbilling *is not* a separate, protected class of First Amendment activity," Opp. p. 20 (emphasis in original); this frames the issue in a way that suits them. Whether or not handbilling is a separately protected class of activity is irrelevant; handbilling is a form of outreach that depends upon being within arm's reach and conversational distance. Therefore, a buffer zone can impose barriers whether it is 35 feet or only 10.

To support their argument, Defendants cite two post-*McCullen* cases; neither supports the Defendants' position here.

In *Left Field Media LLC v. City of Chicago*, 2015 U.S. Dist. LEXIS 135632, 2015 WL 5881604 (N.D. Ill. 2015), (1) the case involved peddling, (2) the stadium's "unique footprint" caused congestion, and (3) the court noted that unlike the plaintiffs in *McCullen* who (as here) sought to be within conversational distance, peddlers attract attention by being loud. *Left Field*, 2015 U.S. Dist. LEXIS 135632 at *31 n. 17.

*Bruni v. City of Pittsburgh*, 91 F. Supp. 3d 658 (W.D. Pa. 2015), involved a 15-foot

buffer zone around an entrance, and the defendants clarified that "sidewalk counselors" would be permitted to walk through the entrance buffer zone to reach persons approaching from the opposite side, which the plaintiff conceded would make it easier to engage in sidewalk counseling. *Bruni*, 91 F. Supp. 3d at 663. Thus, sidewalk counselors could approach everyone within arm's reach and normal conversational distance; they would just have to stop once they neared the entrance (or, if the person is exiting, wait until the person steps beyond the entrance buffer zone).

Meanwhile, the Defendants argue that *Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015), "did not change the legal landscape," and casually mention that the Fourth Circuit in *Reynolds* found that *McCullen* "did nothing more than" clarify the government's burden under intermediate scrutiny, as if burden of proof were a trivial concern. Opp. p. 22. Of course, the Supreme Court did much more than impact the burden of proof – it impacted the analysis applicable to leafletting restrictions. As to the altered burden of proof, the Defendants are wrong to dismiss the significance: "intermediate scrutiny does indeed require the government to present actual evidence supporting its assertion that a speech restriction does not burden substantially more speech than necessary; argument unsupported by the evidence will not suffice to carry the government's burden." *Reynolds*, 779 F.3d at 229. In *Reynolds*, with reasoning precisely applicable here, the court found that the plaintiff's verified complaint regarding dissatisfaction with alternative channels of communication to reach drivers from places other than the street median created a question of fact about their

adequacy. *Reynolds*, 779 F.3d at 232 n. 5.

Similarly, the Defendants argue that *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and *Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015), did not change the legal landscape. The Fourth Circuit, however, expressly recognized *Reed* as a game-changer: "[*Reed*'s] formulation [of the content-neutrality inquiry] conflicts with, and therefore abrogates, our previous descriptions of content neutrality." *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015). In *Ross*, this Court, using the abrogated content-neutrality analysis, stated that "the focus must be on the government's ***purpose*** in promulgating the [Policy]"; "it remains content-neutral rule so long as it was ***intended*** to combat only the secondary effects of the protest." *Ross v. Early* ("*Ross I*"), 758 F. Supp. 2d 313, 321 (D.Md. 2010) (emphasis added). *Reed* held that motive is irrelevant. *Reed,* 135 S. Ct. at 2228. Whether a restriction is content-based depends on "whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 135 S.Ct. at 2227. Included are distinctions regulating speech "by particular subject matter" or "by its function or purpose." *Id.* Because the Policy on its face addressed "Circus Protesters," it was not content neutral and strict scrutiny applies.

Respectfully submitted,
/s/Sean R. Day/s/
Sean R. Day
7500 Greenway Ctr Dr Ste 110
Greenbelt, MD 20770-3511
301.220.2270
301.220.2441 fax
*Sean@DayInCourt.Net*
Attorney for Plaintiff

PLAINTIFF'S REPLY REGARDING MOTION (ECF 38) AND OPPOSITION (ECF 40) • 13-CV-1036 JFM
PAGE 7 OF 7