FILED: October 13, 2017

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1767
(1:13-cv-01036-JFM)

KENNETH LUCERO

        Plaintiff - Appellant

v.

WAYNE A. EARLY; MAYOR AND CITY COUNCIL OF BALTIMORE; BALTIMORE CITY POLICE DEPARTMENT

        Defendants - Appellees

JUDGMENT

In accordance with the decision of this court, the judgment of the district court is vacated. This case is remanded to the district court for further proceedings consistent with the court's decision.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

                                      /s/ PATRICIA S. CONNOR, CLERK

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1767

KENNETH LUCERO,

        Plaintiff - Appellant,

v.

WAYNE A. EARLY; MAYOR AND CITY COUNCIL OF BALTIMORE; BALTIMORE CITY POLICE DEPARTMENT,

        Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:13-cv-01036-JFM)

Argued: September 12, 2017                                  Decided: October 13, 2017

Before THACKER and HARRIS, Circuit Judges, and Norman K. MOON, Senior District Judge for the Western District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Thacker wrote the opinion, which Judge Harris and Judge Moon joined.

**ARGUED:** Sean Robert Day, LAW OFFICE OF SEAN R. DAY, Greenbelt, Maryland, for Appellant. Steven John Potter, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellees. **ON BRIEF:** David E. Ralph, City Solicitor, Glenn T. Marrow, Chief Solicitor, Kara Lynch, Assistant City Solicitor, Ashley McFarland, Assistant City Solicitor, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore,

Maryland, for Appellees.

THACKER, Circuit Judge:

Kenneth Lucero ("Appellant") was arrested in April 2010 after leafleting outside a Baltimore arena during a performance of the Ringling Brothers and Barnum & Bailey Circus ("Circus"). Specifically, he was arrested for failing to confine his leafleting to an area designated for protest activities, as set forth in a protocol formulated by Baltimore's legal department in 2004 ("Protocol"). Appellant filed suit in the District of Maryland, challenging the constitutionality of the Protocol.

Three years ago, we addressed a challenge to the same Protocol. *See Ross v. Early*, 746 F.3d 546 (4th Cir. 2014). In that case, Aaron Ross likewise failed to confine his leafleting activities to the designated areas, was arrested, and filed suit challenging the constitutionality of the Protocol. The district court upheld the Protocol, and we affirmed. *See id.* at 549.

In the instant case, the district court dismissed Appellant's complaint, reasoning that this court had already considered his constitutional claim in *Ross*. We disagree. Significantly, in *Ross*, the parties entered into a stipulation that dictated the level of constitutional scrutiny, but the parties to the instant case did not. Moreover, the district court in the instant case did not consider an intervening relevant Supreme Court decision, *McCullen v. Coakley*, 134 S. Ct. 2518 (2014), and did not have the benefit of another, *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). For these reasons, we vacate and remand for further proceedings.

3

I.

The First Mariner Arena ("Arena") is a sports and entertainment venue in downtown Baltimore. Once a year, the city of Baltimore leases the Arena to Feld Entertainment for performances of the Circus. The Circus attracts thousands of patrons for weekday performances, along with activists objecting to the Circus's treatment of animals. The activists have engaged in leafleting and, occasionally, sign holding and chanting.

Following an incident in 2003, during which the area around the Arena experienced traffic and pedestrian flow problems on the day of a Circus performance, Baltimore's legal department formulated the Protocol and distributed it in a 2004 email. Thereafter, the Protocol was circulated annually in similar form in anticipation of the Circus's yearly visit. In keeping with tradition, Baltimore's chief solicitor once again distributed the Protocol in email form to city officials on March 25, 2009. The email had the subject line "Circus Protestors" and stated the following language:[1]

> For the past several years the Police Department in conjunction with the Law Department has planned for handling the movement of attendees and protesters around the Baltimore Arena during the Ringling Bros. Circus. The goal of the plan, as always, is to allow attendees to have easy access to the Arena entrances while providing ample opportunities for those who wish to express their views about the Circus. The plan has worked well in the past and remains the same for this year . . . . The plan is as follows:

---

[1] The Protocol emails sent in previous years (including the one in *Ross*) contained similar subject lines such as "Plan for Circus Protesters" (March 2006) and "Plan for Circus pedestrian flow at the Baltimore Arena" (March 2007).

4

> 1. East side of Arena (Hopkins Place) – Any protesters will be asked to move to the sidewalk between the Arena and Hopkins Place. This would help alleviate any congestion problems at the main entrance.
>
> 2. North side of Arena (Baltimore Street) – Any protesters will be directed to stay within the brick areas of the sidewalk, approximately 13 feet wide between the curb and the middle of the sidewalk. This provides the remainder of the sidewalk closer to the building for foot traffic to access Baltimore Street and main entrances.
>
> 3. West side of Arena (Howard Street) – Any protesters will be asked to remain on the corner of Howard and Baltimore streets or to move to the middle of the block south of the Howard Street entrance. This will allow sufficient room for attendees to access the Arena from the Howard Street entrance.
>
> Anyone who is [sic] refuses to obey these guidelines, will receive at least two verbal requests for compliance prior to an officer making an arrest.

J.A. 50 (emphasis omitted).[2]

Appellant's amended complaint alleges that on April 17, 2010, he leafleted on the day of a Circus performance outside of the Arena. Baltimore police officers told Appellant about the Protocol and ordered him to confine his leafleting to the permitted area. When Appellant failed to comply with the officers' directives, he was arrested by Officer Wayne Early and later released without formal charges. He thereafter filed suit in

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal. Although there is no 2010 email in the record, the amended complaint alleges that the Protocol in effect at the time of his arrest in 2010 was the same as the 2009 Protocol. At this stage, we accept that allegation as true. *See Matherly v. Andrews*, 859 F.3d 264, 274 (4th Cir. 2017).

5

the District of Maryland against the Baltimore City Police Department ("BPD"), the Mayor and City Council of Baltimore ("City"), and Officer Early (collectively, "Appellees"). He raised federal constitutional claims against all Appellees pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 36 U.S. 658, 694 (1978), and state law claims alleging false arrest and unreasonable seizure against Officer Early alone. As a basis for his claims, he alleges that the Protocol and its enforcement violated his First Amendment rights, as he contends the only effective way to reach Circus attendees through leafleting is to be within arm's reach and conversational distance, and the invisible barrier imposed by the Protocol diminished the efficacy of his speech.

The City and BPD moved to dismiss the complaint on the basis that our decision in *Ross v. Early*, 746 F.3d 546 (4th Cir. 2014), had resolved the constitutional issue underlying Appellant's claims. The district court granted that motion. Appellant appealed, but we dismissed the appeal because claims remained outstanding against Officer Early. The district court then dismissed the claims against Officer Early, and Appellant timely noted this appeal.

II.

We review a district court's grant of a motion to dismiss de novo. *See Matherly v. Andrews*, 859 F.3d 264, 274 (4th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "We accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Id.*

6

III.

We must decide whether *Ross v. Early*, 746 F.3d 546 (4th Cir. 2014), commands dismissal of Appellant's complaint. In that case, Ross claimed the Protocol was an invalid time, place, and manner restriction on First Amendment activity. *See id.* at 549. Ross and the City both moved for summary judgment, but the district court denied the cross-motions because "the level of scrutiny applicable to the P[rotocol] turned on a disputed question of material fact, i.e., whether the P[rotocol] was of general application, like an ordinance, or specifically targeted to circus and animal welfare protestors, like an injunction." *Id.* at 551 (internal quotation marks omitted).

At that point, the parties to the *Ross* litigation, "[f]aced with an imminent jury trial that would determine the level of scrutiny applicable to the P[rotocol]," entered into a stipulation agreeing that the Protocol was "generally applicable toward all expressive activity" and "not targeted toward restricting activities of circus and animal welfare street protestors specifically." *Ross*, 746 F.3d at 551–52 (alteration and internal quotation marks omitted). The district court then determined intermediate scrutiny should apply and upheld the Protocol as a reasonable time, place, and manner restriction. *See id.* at 552. On appeal, Ross "accept[ed] intermediate scrutiny as the applicable standard," and we affirmed. *Id.*

In the instant action, however, the parties have not stipulated to the general applicability of the Protocol. To the contrary, in the district court the parties disputed the level of scrutiny that should apply, and they continue to do so on appeal. *See* Mem. Supp. Motion to Dismiss, *Lucero v. Early*, No. 1:13-cv-1036 (D. Md. filed Nov. 14,

7

2014), ECF No. 29–1 at 3; Resp. Mot. to Dismiss (filed Dec. 2, 2014), ECF No. 30 at 13; *compare* Appellant's Br. 27 (contending that strict or heightened scrutiny should apply), *with* Appellees' Br. 19 (contending that intermediate scrutiny should apply).

This is a critical distinction between this case and *Ross*, as a dispute of fact on the general applicability of the Protocol necessitates an analysis of whether the Protocol is content neutral. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are *justified without reference to the content of the regulated speech*, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." (internal quotation marks omitted) (emphasis supplied)); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (explaining content based time, place, and manner regulations are subject to strict scrutiny); *see also McCullen v. Coakley*, 134 S. Ct. 2518, 2530 (2014) (considering the content neutrality question first to determine level of scrutiny). This court in *Ross* never had the chance to decide whether the Protocol is content neutral in the absence of a general applicability stipulation; therefore, that decision cannot be fairly said to dictate the outcome here.

Moreover, two Supreme Court decisions issued after *Ross* have shed more light on the content neutrality question. In *McCullen v. Coakley*, the Court concluded that an Act creating a buffer zone around abortion clinics, which precluded leafleting within a certain radius, was content neutral, even though the law itself applied only to "reproductive health care facilit[ies]." 134 S. Ct. at 2525. The Court reasoned, "Whether petitioners

8

violate the Act depends not on what they say, but simply on where they say it." *Id.* at 2531 (citation and internal quotation marks omitted). Indeed, the Court explained, "petitioners can violate the Act merely by standing in a buffer zone, without displaying a sign or uttering a single word." *Id.* The Court also noted, "The Act would be content based if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *Id.* (citing *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)).

A year later, in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), the Supreme Court concluded that a town's sign ordinance was content based, and thus subject to strict scrutiny, because it placed restrictions on signs based on their "communicative content." *Id.* at 2227. The Court explained that content neutrality should be analyzed in two steps. First, a court should ask whether a law "on its face draws distinctions based on the message a speaker conveys." *Id.* (internal quotation marks omitted); *see also Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ("'[T]he crucial first step in the content-neutrality analysis' is to 'determin[e] whether the law is content neutral on its face.'" (quoting *Reed*, 135 S. Ct. at 2228)). If so, the law is content based regardless of "the government's justification or purpose" in enacting it. *Cent. Radio Co. Inc. v. City of Norfolk*, 811 F.3d 625, 632 (4th Cir. 2016). Second, even if the law is facially content neutral, it can nonetheless be considered content based if it "cannot be justified without reference to the content of the regulated speech, or [it was] adopted by the government because of disagreement with the message the speech conveys." *Reed*, 135 S. Ct. at 2227 (alterations and internal quotation marks omitted). Because the government's purpose in

9

adopting a law is no longer "the controlling consideration," *Reed* was a crucial decision, "abrogat[ing] our Circuit's previous formulation for analyzing content neutrality." *Cent. Radio Co.*, 811 F.3d at 632 (citing *Cahaly*, 796 F.3d at 405).

In light of *McCullen* and *Reed*, there is much in dispute that may be critical to the content neutrality question in this case, including but not limited to whether the Protocol required officers to check the content of the leaflets before engaging in enforcement measures (i.e., whether violation of the Protocol depends on "what [protestors] say," not just where they say it), and, if facially content neutral, whether the Protocol was adopted because of a disagreement with the Appellant's message.

The district court failed to take account of the factual dispute below, did not consider *McCullen*, and did not have the benefit of *Reed*. We therefore remand this action for the district court to analyze in the first instance whether the Protocol is content neutral and, in turn, the correct scrutiny to apply, along with necessary further proceedings as to all counts in the amended complaint.

IV.

For the foregoing reasons, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

FILED: October 13, 2017

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1767,    <u>Kenneth Lucero v. Wayne Early</u>
1:13-cv-01036-JFM

---

NOTICE OF JUDGMENT

---

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate. If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition. Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. (<u>www.supremecourt.gov</u>)

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers must be submitted within 60 days of entry of judgment or denial of rehearing, whichever is later. If counsel files a petition for certiorari, the 60-day period runs from filing the certiorari petition. (Loc. R. 46(d)). If payment is being made from CJA funds, counsel should submit the CJA 20 or CJA 30 Voucher through the CJA eVoucher system. In cases not covered by the Criminal Justice Act, counsel should submit the Assigned Counsel Voucher to the clerk's office for payment from the Attorney Admission Fund. An Assigned Counsel Voucher will be sent to counsel shortly after entry of judgment. Forms and instructions are also available on the court's web site, <u>www.ca4.uscourts.gov</u>, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a <u>Bill of Costs</u> within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition and included in the docket entry to identify the cases to which the petition applies. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari. In consolidated criminal appeals, the filing of a petition for rehearing does not stay the mandate as to co-defendants not joining in the petition for rehearing. In consolidated civil appeals arising from the same civil action, the court's mandate will issue at the same time in all appeals.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 3900 words if prepared by computer and may not exceed 15 pages if handwritten or prepared on a typewriter. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE:** In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).

# U.S. COURT OF APPEAL FOR THE FOURTH CIRCUIT BILL OF COSTS FORM
(Civil Cases)

**Directions:** Under FRAP 39(a), the costs of appeal in a civil action are generally taxed against appellant if a judgment is affirmed or the appeal is dismissed. Costs are generally taxed against appellee if a judgment is reversed. If a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed as the court orders. A party who wants costs taxed must, within 14 days after entry of judgment, file an itemized and verified bill of costs, as follows:
- Itemize any fee paid for docketing the appeal. The fee for docketing a case in the court of appeals is $500 (effective 12/1/2013). The $5 fee for filing a notice of appeal is recoverable as a cost in the district court.
- Itemize the costs (not to exceed $.15 per page) for copying the necessary number of formal briefs and appendices. . (Effective 10/1/2015, the court requires 1 copy when filed; 3 more copies when tentatively calendared; 0 copies for service unless brief/appendix is sealed.). The court bases the cost award on the page count of the electronic brief/appendix. Costs for briefs filed under an informal briefing order are not recoverable.
- Cite the statutory authority for an award of costs if costs are sought for or against the United States. See 28 U.S.C. § 2412 (limiting costs to civil actions); 28 U.S.C. § 1915(f)(1) (prohibiting award of costs against the United States in cases proceeding without prepayment of fees).

Any objections to the bill of costs must be filed within 14 days of service of the bill of costs. Costs are paid directly to the prevailing party or counsel, not to the clerk's office.

Case Number & Caption: _____

Prevailing Party Requesting Taxation of Costs: _____

| Appellate Docketing Fee (prevailing appellants): | | | Amount Requested: _____ | | | Amount Allowed: _____ | |
|---|---|---|---|---|---|---|---|
| Document | No. of Pages | | No. of Copies | | Page Cost ($\leq$$.15) | Total Cost | |
| | Requested | Allowed | Requested | Allowed | | Requested | Allowed |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **TOTAL BILL OF COSTS:** | | | | | | $0.00 | $0.00 |

1. If copying was done commercially, I have attached itemized bills. If copying was done in-house, I certify that my standard billing amount is not less than $.15 per copy or, if less, I have reduced the amount charged to the lesser rate.
2. If costs are sought for or against the United States, I further certify that 28 U.S.C. § 2412 permits an award of costs.
3. I declare under penalty of perjury that these costs are true and correct and were necessarily incurred in this action.

**Signature:** _____  **Date:** _____

### Certificate of Service

I certify that on this date I served this document as follows:

**Signature:** _____  **Date:** _____