IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KENNETH LUCERO,                           :

    Plaintiff,                           :

v.                                        :          Civil Action No. GLR-13-1036

WAYNE A. EARLY, et al.,                   :

    Defendants.                          :

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Mayor & City Council's ("Baltimore City" or the "City") Motion to Dismiss Count Two of the Amended Complaint (ECF No. 54) and Defendant Baltimore Police Department's ("BPD") Motion to Dismiss Amended Complaint (ECF No. 59). Also pending before the Court are Plaintiff Kenneth Lucero's Motion for Leave to File Surreply Regarding City's Motion to Dismiss (ECF No. 62) and Motion for Leave to File Surreply Regarding BPD's Motion to Dismiss (ECF No. 66). In this 42 U.S.C. § 1983 (2018) action, Lucero challenges the City's restrictions on leafletting near the First Mariner Arena in Baltimore, Maryland and his arrest for violating those restrictions. The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motions to Dismiss and grant Lucero leave to amend the Amended Complaint. The Court will also deny Lucero's Motions for Leave to File Surreply.

# I.    BACKGROUND[1]

## A.    <u>Factual Background</u>

Baltimore City owns the First Mariner Arena (the "Arena"), located at 201 West Baltimore Street in Baltimore, Maryland.  (Am. Compl. ¶ 10, ECF No. 24).  Every year, the City leases the Arena to the owners of Ringling Brothers Circus ("Ringling" or the "Circus") for almost two weeks, during which time Ringling holds daily performances.  (<u>Id.</u> ¶ 12).

In 2004, apparently prompted by a 2003 incident in which a media van impeded the flow of traffic, the City and BPD "jointly formulated" a policy (the "Policy")[2] that restricted protestors', including leafletters', use of the sidewalk and plaza area surrounding the Arena during the Circus.  (<u>Id.</u> ¶¶ 14–15).  The Policy "prohibits Circus protesters from using the approximately [fifteen] feet of [s]idewalk abutting the north side (Baltimore Street) of the Arena; all of the north half (the half containing the entrance) of the Howard Street [s]idewalk on the west; and all of the Hopkins Place Plaza on the east."  (<u>Id.</u> ¶ 18).  In effect, the Policy imposes a "buffer zone" around "all public entrances to the Arena" and "areas where Circus attendees are likely to walk."  (<u>Id.</u> ¶ 26).  These restrictions prevent leafletters from being at a "conversational distance" from Circus patrons.  (<u>Id.</u>).  They are in place only when the Circus is at the Arena.  (<u>Id.</u> ¶ 19).

---

[1] Unless otherwise noted, the Court takes the following facts from Lucero's Amended Complaint and accepts them as true.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations omitted).

[2] The Court uses the term "Policy" for the sake of simplicity.  It is not intended as a conclusion—express or implied—that the restrictions on leafletting are a policy under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

In addition, Defendant BPD officer Wayne A. Early ("Officer Early") and other BPD officers "in a widespread custom" enforce the Policy "only against those who oppose the Circus." (Id. ¶ 21).

In April 2010, Ringling was in Baltimore for its annual daily performances. (See id. ¶¶ 27–28). On April 8, 9, and 10, 2010, Lucero "wanted to leaflet in restricted areas" but did not because Officer Early and other BPD officers threatened him with arrest based on the Policy. (Id. ¶ 27). On April 17, 2010, Lucero leafletted in a restricted area, and Officer Early arrested him for violating the Policy. (Id. ¶ 28). BPD detained Lucero for "several hours" at a booking facility. (Id. ¶ 31). BPD ultimately released Lucero without bringing any criminal charges against him. (Id.).

**B.    Relevant Procedural History**

On April 8, 2013, Lucero sued Officer Early, the City, and BPD. (ECF No. 1). On October 17, 2014, Lucero filed an Amended Complaint.[3]    (ECF No. 24). In his five-count Amended Complaint, Lucero alleges: (1) direct liability for violations of his constitutional rights under § 1983 against Officer Early (Count 1); (2) municipal liability for violations of his constitutional rights under § 1983 against the City and BPD,

---

[3] On February 26, 2016, the Court dismissed the claims against the City and BPD. (ECF Nos. 32, 33). On June 29, 2016, the Court dismissed the claims against Officer Early. (ECF Nos. 43, 44). Lucero appealed. The United States Court of Appeals for the Fourth Circuit vacated and remanded for further proceedings consistent with its decision. (ECF No. 48). The Fourth Circuit instructed this Court to analyze whether the Policy is content neutral and which level of scrutiny to apply. (4th Cir. Op. at 10, ECF No. 48). The City's and BPD's Motions do not address this issue. Rather, the Motions move to dismiss the claims against the City and BPD because Lucero fails to sufficiently state Monell claims against them. Accordingly, the Court does not address whether the Policy is content neutral or the applicable level of scrutiny at this time.

challenging the Policy as applied to the leafletters (Count 2); (3) municipal liability for violations of his constitutional rights under § 1983 against the City and BPD for discriminatory enforcement of the Policy (Count 3); (4) False Arrest against Officer Early (Count 4); and (5) violation of Article 26 of the Maryland Declaration of Rights against Officer Early (Count 5). (Id. ¶¶ 39–62). Lucero seeks damages, attorney's fees, and costs. (Id. at 13).

On November 29, 2017, the City filed a Motion to Dismiss Count Two of the Amended Complaint. (ECF No. 54). Lucero filed an Opposition on December 8, 2017. (ECF No. 58). On December 21, 2017, the City filed a Reply. (ECF No. 60). Lucero filed a Motion for Leave to File Surreply Regarding City's Motion to Dismiss on December 27, 2017. (ECF No. 62). On January 3, 2018, the City filed an Opposition. (ECF No. 64). To date, the Court has no record that Lucero filed a Reply.

On December 13, 2017, BPD filed a Motion to Dismiss Amended Complaint. (ECF No. 59). Lucero filed an Opposition on December 27, 2017. (ECF No. 61). On January 10, 2018, BPD filed a Reply. (ECF No. 65). Lucero filed a Motion for Leave to File Surreply Regarding BPD's Motion to Dismiss on January 16, 2018. (ECF No. 66). To date, the Court has no record that BPD filed an Opposition.

**C.**     **Ross v. Early Litigation**

In a related case, Aaron Ross v. Wayne A. Early, No. JFM-9-3255 (D.Md. closed Nov. 30, 2012), Aaron Ross sued BPD, the City, then-Commissioner Frederick H. Bealefeld, III, and three solicitors for the Baltimore City Law Department, alleging that

the Policy at issue in this case violated the First Amendment to the United States Constitution, both facially and as applied. Ross v. Early (Ross III), 899 F.Supp.2d 415, 418 (D.Md. 2012), aff'd, 746 F.3d 546 (4th Cir. 2014).[4] The Ross III Court denied BPD's and the City's motions for summary judgment regarding the constitutionality of the Policy. Id. at 425. In an earlier opinion, the Court concluded that the Policy was content-neutral, served a significant government interest, and provided sufficient alternative avenues for communication. Id. at 421 (citing Ross v. Early (Ross II), 758 F.Supp.2d 313, 320 (D.Md. 2010)). The Court further concluded that there was a genuine dispute of material fact regarding whether the Policy was narrowly tailored, which depended on the Policy's scope and the corresponding level of scrutiny. Id. at 425. As a result, the parties entered into a stipulation for the purposes of appealing the Court's ruling. Ross, 746 F.3d at 551. The Ross parties stipulated that the Policy applied generally to "all expressive activity" and not to "the activities of circus and animal welfare street protesters specifically." Id. Consequently, the United States Court of Appeals for the Fourth Circuit reviewed the Policy under intermediate scrutiny and ultimately held that it did not violate the First Amendment. Id. at 555.

---

[4] Ross also brought false arrest and false imprisonment claims against Officer Early. Ross III, 899 F.Supp.2d at 418.

## II.    DISCUSSION

**A.    Motions for Leave to File Surreply**

"Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed."  Local Rule 105.2(a) (D.Md. 2016).  Typically, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001)).

Lucero moves for leave to file surreplies to the City's Motion and BPD's Motion. The Court addresses Lucero's Motions in turn.

### 1.    Motion for Leave to File Surreply Regarding City's Motion to Dismiss

Lucero requests leave of the Court to file a Surreply to address collateral estoppel argument presented in the City's Reply.  Lucero also seeks to clarify that he is not relying on the stipulation between the parties in Ross.  Lucero's requests are misplaced.

Collateral estoppel, also called issue preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  E. Associated Coal Co. v. Dir., Office of Workers' Comp. Programs, 578 F.App'x 165, 173 (4th Cir. 2014) (quoting Taylor v. Sturgell, 553 U.S. 880, 891 (2008)).  A party invoking collateral estoppel must establish that: (1) "the issue sought to be precluded is identical to one previously litigated"; (2) "the issue was actually determined in the prior proceeding"; (3) "the issue's determination was 'a critical and necessary part of the decision in the

6

prior proceeding'"; (4) "the prior judgment is final and valid"; and (5) "the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum.'" Id. (quoting Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006)). Offensive collateral estoppel is "[w]hen a plaintiff employs the doctrine of collateral estoppel or issue preclusion 'to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party.'" In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004) (emphasis in original) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979)).

Here, although Lucero does not expressly state that he is asserting offensive collateral estoppel, he cites Ross III in support of the proposition that this Court has already held that the Policy is a Monell policy, and, therefore, the Court should deny the City's Motion. In his Opposition, Lucero cites Ross III, 899 F.Supp.2d at 419, and asserts that "[t]his Court has already held that [the Policy] 'was a clear, municipal policy.'" (Pl.'s Opp'n City's Mot. at 3, ECF No. 58). In other words, Lucero seeks to preclude an issue that he contends was previously litigated. See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. With regard to the stipulation in Ross, the City cites it in support of its argument that Lucero has not satisfied the elements of collateral estoppel. The City does not assert that Lucero is relying on the stipulation in this case. The Court, therefore, concludes that the City's Reply merely responds to an argument in

Lucero's Opposition. Accordingly, the Court will deny Lucero's Motion for Leave to File Surreply Regarding City's Motion to Dismiss.

### 2. Motion for Leave to File Surreply Regarding BPD's Motion to Dismiss

Lucero seeks leave of the Court to file a Surreply to BPD's Reply because BPD "attributes an argument" to Lucero that he did not make and "confuses the issues" related to Lucero's claims against BPD. (Pl.'s Mot. Leave File Surreply BPD's Mot. at 1, ECF No. 66). Even though the Motion is unopposed, because it merely seeks to clarify arguments raised in Lucero's Opposition to BPD's Motion, and does not address any new arguments raised in BPD's Reply, the Court will deny the Motion.

### B. Motions to Dismiss Under Rule 12(b)(6)

### 1. 12(b)(6) Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at

556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2. Analysis

#### a. Ross v. Early Exhibits

As a threshold matter, the Court notes that in the Amended Complaint, Lucero presents a list of twenty-eight exhibits—in no particular order—from Ross, No. JFM-09-3255. Lucero asserts that the Court may consider these documents on a motion to

dismiss, either because they are incorporated by reference or through judicial notice. The Court is not persuaded.

The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Lucero seeks to utilize the second and third exceptions. The Court addresses the exceptions in turn.

### i.     Incorporation by Reference

Federal Rule of Civil Procedure 10(c) permits a "statement in a pleading" to be incorporated by reference "in the same pleading or in any other pleading or motion." Incorporation by reference under Rule 10(c) must also be "direct and explicit" so that the responding party can determine the "nature and extent of the incorporation." Hinton v. Trans Union, LLC, 654 F.Supp.2d 440, 446 (E.D.Va. 2009) (quoting 5A Charles Alan

Wright & Arthur R. Miller, Federal Practice & Procedure § 1326 (3d ed. 2004)), aff'd, 382 F.App'x 256 (4th Cir. 2010). This "clarity requirement" "ensures fairness." Id. at 446–47 (quoting 5A Wright & Miller, supra, § 1326). Without it, incorporations "may prove confusing and inconvenient." Id. (quoting 5A Wright & Miller, supra, § 1326).

Although the Fourth Circuit has not weighed in on the issue, other courts have concluded that a pleading that incorporates allegations from other documents "must clarify which statements are to be incorporated." Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7 of Jefferson Cty., 747 F.2d 1195, 1198 (8th Cir. 1984); Levitch v. Colum. Broad. Sys., Inc., 94 F.R.D. 292 (S.D.N.Y. 1982), aff'd, 697 F.2d 495 (2d Cir. 1983). Rule 10(c) also requires a party to attach exhibits that are incorporated into a pleading. Fed.R.Civ.P. 10(c).[5]

In Hinton, the plaintiff's first amended complaint purported to "incorporate[ ] all allegations, claims, assertions, statements, and theories set forth or attempted to be set forth in the Original Complaint." 654 F.Supp. 2d at 444 (alteration in original). It also contained additional allegations of violations of federal and state law. Id. In response to the defendants' motion to dismiss, the plaintiff filed a second amended complaint which sought "wholesale incorporation of both the original and the first amended complaints." Id. at 445. The court noted that the plaintiff "made no effort" to be "direct and explicit" in his incorporation clauses. Id. at 447. Nor did he "even arguably enable[ ] defendants

---

[5] Rule 10(c) further provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Lucero did not attach any of the Ross exhibits to his Amended Complaint. Accordingly, the exhibits are not part of the Amended Complaint.

to ascertain precisely which portions of [the second amended complaint] are not duplicative of their respective predecessors, but are intended to add new material." Id. The court, therefore, concluded that the plaintiff's attempts at wholesale incorporation of his prior pleadings did not pass Rule 10(c)'s clarity requirement. Id. at 447–48. Accordingly, the court denied the plaintiff's motion for leave to amend. Id. at 448.

Here, similar to Hinton, Lucero does not allege facts contained in the exhibits in the Amended Complaint, or otherwise indicate how the exhibits themselves provide factual support for his allegations. Instead, he presents an unadorned list of exhibits from another case. On a motion to dismiss, the Court accepts all the facts in the complaint to be true. Albright, 510 U.S. at 268. Because the Court and, more importantly, Defendants do not know which facts, if any, Lucero intends to incorporate from these exhibits into the Amended Complaint, or if the exhibits themselves are intended to be facts, the Court concludes that Lucero's attempt at incorporation by reference does not satisfy the clarity requirement. See Hinton, 654 F.Supp.2d at 447. Further, by its plain language, Rule 10(c) permits the adoption by reference of a statement in a pleading. Fed.R.Civ.P. 10(c). Lucero, by contrast, incorporates by reference exhibits to a motion in a different case. Accordingly, the Court declines to consider the Ross exhibits under the second exception.

### ii.    Judicial Notice

The Court may take judicial notice of "'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" Goldfarb v. Mayor of Balt., 791 F.3d 500, 508 (4th Cir. 2015) (quoting Philips v. Pitt

Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). In particular, Rule 201 permits a court to take judicial notice of an adjudicative fact if it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Here, Lucero does not identify which adjudicative facts, if any, from each of the Ross exhibits that he would like the Court to take judicial notice of. Lucero also does not identify what the Ross exhibits purport to demonstrate, nor whether he is requesting that the Court take judicial notice of the exhibits themselves, their contents, or both. Without any guidance from Lucero, the Court does not know which facts he contends are not reasonably in dispute. See Fed.R.Evid. 201(b). Thus, the Court will not consider the Ross exhibits under the judicial notice exception.

In sum, the Court declines Lucero's invitation to ferret through nearly thirty exhibits in a different case to discern whether he plausibly states a claim in this case. The Court next considers the merits of the City's and BPD's Motions to Dismiss.

### b. Motions to Dismiss

Under Monell v. Department of Social Services, a municipality, such as the Baltimore Police Department, is subject to suit under § 1983. 436 U.S. 658, 690 (1978). A plaintiff may sue a municipality under § 1983 if she suffered a constitutional violation at the hands of an employee acting under color of a municipal policy. Id. at 692. Under Monell, however, "a municipality is liable only for its own illegal acts." Owens v. Balt. City State's Attorney's Office, 767 F.3d 379, 402 (4th Cir. 2014). As a result, "[o]nly if

13

a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the <u>sine qua non</u> of <u>Monell</u> liability." <u>Id.</u> <u>Respondeat superior</u> liability is insufficient under <u>Monell</u>'s standard. <u>Monell</u>, 436 U.S. at 693–94.

All § 1983 <u>Monell</u> claims have three elements: "(1) identifying the specific 'policy' or 'custom'[;] (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation." <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1389 (4th Cir. 1987), <u>cert. denied sub nom.</u>, <u>City of Fayetteville v. Spell</u>, 484 U.S. 1027 (1988); <u>see also</u> <u>Jones v. Chapman</u>, No. ELH-14-2627, 2015 WL 4509871, at *12 (D.Md. July 24, 2015) ("[A] municipality is liable when a policy or custom is fairly attributable to the municipality as its own, and is . . . the moving force behind the particular constitutional violation." (citation omitted)).

A plaintiff may allege four types of customs, policies, or practices: (1) the "decisions of a government's lawmakers;" (2) "the acts of its policymaking officials;" (3) "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights," known as a "failure to train" claim; and (4) "practices so persistent and widespread as to practically have the force of law," known as a condonation claim. <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011).

"Although prevailing on the merits of a <u>Monell</u> claim is difficult, simply alleging such a claim is, by definition, easier." <u>Owens</u>, 767 F.3d at 403. To sufficiently state a <u>Monell</u> claim under Rule 12(b)(6), a plaintiff "need only allege facts which, if true, 'state

a claim to relief that is plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678). The complaint's facts "need not be particularly detailed, and the chance of success need not be particularly high." Id. "A plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." Id. (quoting Iqbal, 556 U.S. at 678).

Here, although the Amended Complaint is not a model of clarity, Lucero appears to allege the second and fourth types of customs, policies, or practices—the acts of policymaking officials and a persistent and widespread practice of violating citizens' constitutional rights. Lucero brings the second type of Monell claim against the City and BPD in Count 2; he brings the fourth type against BPD only in Count 3. The Court first addresses Lucero's claim premised on the second type of Monell custom, policy, or practice.

### i.      Acts of Policymaking Officials Claim

Both BPD and the City maintain that Lucero fails to state a § 1983 Monell claim based on the acts of policymaking officials because Lucero does not allege that a BPD or City official with final policymaking authority adopted the Policy. The Court agrees.

A municipality is not "automatically subject[ed]" to § 1983 liability for "every decision by municipal officers." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality). Rather, a municipality may be liable "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Lane v. Anderson, 660 F.App'x 185, 197 (4th Cir. 2016) (quoting Pembaur, 475 U.S. at

481). A decisionmaker with final policymaking authority is an individual who has "the responsibility and authority to implement final municipal policy with respect to a particular course of action." Lytle v. Doyle, 326 F.3d 463, 472 (4th Cir. 2003) (quoting Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000)). Put another way, a decisionmaker possesses "final authority" to set a particular policy when "no further action is needed for the policy to take effect." Liverman v. City of Petersburg, 844 F.3d 400, 413 (4th Cir. 2016). Whether an individual or entity possesses such authority is generally a question of state law. Pembaur, 475 U.S. at 483.

Here, the Amended Complaint is devoid of factual matter concerning the decisionmaker who implemented the Policy. Lucero merely alleges that the City and BPD "worked together to formulate" the Policy and "jointly formulated a Monell policy." (Am. Compl. ¶ 9). To be sure, Lucero does plead that Officer Early and his business partner "persuaded a City attorney to draft the Policy." (Id. ¶ 17). Lucero does not allege, however, that the City attorney had final policymaking authority. Nor does he name an individual or individuals allegedly responsible for implementing the Policy on behalf of BPD and Baltimore City. Beyond stating that BPD and the City "jointly promulgated and ratified [the Policy] through their policymakers," (Id. ¶ 44), the Amended Complaint lacks any allegation that "authorized policymakers approved a subordinate's decision and the basis for it." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). As a result, the Policy cannot fairly be attributed to BPD or the City. See id. Lucero's brief, conclusory allegations, therefore, do not sufficiently allege that an official

16

with final policymaking authority implemented the policy. Owens, 767 F.3d at 403 (quoting Iqbal, 556 U.S. at 678).

In his Opposition to BPD's Motion, Lucero states that the Policy was "distributed directly to BPD's Chief Legal Counsel and to its second-in-command (and commander of police operations)." (Pl.'s Opp'n BPD's Mot. at 7, ECF No. 61). Citing the Ross exhibits, Lucero also asserts that in 2009 the then-City Chief Solicitor distributed the Policy to BPD and City officials, like her predecessor. (Id. at 3). In distributing the Policy, the Chief Solicitor wrote, "For the last several years the Police Department in conjunction with the [City's] Law Department had planned for the handling [of] the movement of attendees and protesters around the Baltimore Arena during the Ringling Bros. Circus." (Id.). These assertions, when taken together with other facts, could make it plausible that BPD and City officials with final policymaking authority implemented the Policy. But these assertions do not appear in the Amended Complaint.

Further, to support these assertions Lucero cites Ross, No. JFM-9-3255, ECF No. 36-14, which he states was incorporated into the Amended Complaint. Lucero is mistaken. Ross, ECF No. 36-14 is not incorporated by reference into the Amended Complaint. (See Am. Compl. ¶ 38). Even if it was, that does not relieve Lucero of the responsibility of stating the factual allegations contained in the exhibit in his pleadings. See Ulloa v. Prince George's Cty., No. DKC 15-0257, 2015 WL 7878956, at *4 (D.Md. Dec. 4, 2015) (stating that "[c]itation to lawsuits is not equivalent to offering factual allegations" in a Monell claim suit where the plaintiff "simply includ[ed] a string citation

17

of ten lawsuits"). The Court will, therefore, grant Lucero leave to amend his Amended Complaint to address the aforementioned shortcomings.

Thus, the Court concludes that Lucero fails to plausibly allege a <u>Monell</u> claim based on the acts of policymaking officials. Accordingly, the Court will grant BPD's Motion and the City's Motion as to Count 2 of the Amended Complaint and permit Lucero to amend his Amended Complaint if he so chooses.

### ii.  Condonation Claim

BPD asserts that the Amended Complaint contains no factual allegations of a widespread custom or practice or that BPD was deliberately indifferent to Officer Early's discriminatory enforcement of the Policy.[6] The Court agrees that Lucero fails to allege a widespread custom or practice.

"Under th[e] [condonation] theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" <u>Owens</u>, 767 F.3d at 402 (alterations in original) (quoting <u>Spell</u>, 824 F.2d at 1390). The pattern of unconstitutional conduct must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Carter v. Morris</u>, 164 F.3d 215, 218 (4th Cir. 1999) (quoting <u>Monell</u>, 436 U.S. at 691). Generally, bringing a condonation claim requires a plaintiff to prove "a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1)

---

[6] BPD also contends that because the <u>Ross</u> Court held that the individual BPD defendants were entitled to qualified immunity, that conclusion forecloses any allegation of deliberate indifference on the part of BPD. Because the Court concludes that Lucero fails to state a <u>Monell</u> claim against BPD, it does not address this argument.

had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens, 767 F.3d at 402 (quoting Spell, 824 F.2d at 1391). Both elements "can be inferred from the 'extent' of employees' misconduct." Id. (quoting Spell, 824 F.2d at 1391). Only "widespread or flagrant" misconduct is sufficient. Id. at 403 (quoting Spell, 824 F.2d at 1387). "Sporadic or isolated" misconduct is not. Id. Further, the Court will not infer a Monell custom from municipal inaction in the face of "isolated constitutional deprivations by municipal employees." Sutton v. Billings, No. ELH-16-3364, 2017 WL 2335555, at *7 (D.Md. May 26, 2017) (quoting Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984)).

While proving a condonation claim "is no easy task," alleging a condonation claim is, "by definition, easier." Owens, 767 F.3d at 403. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only support his condonation claim with facts which, if true, "state a claim to relief that is plausible on its face." Id. (quoting Iqbal, 556 U.S. at 678). The facts "need not be particularly detailed," and a plaintiff fails to state a condonation claim "only when he offers 'labels and conclusions' or formulaically recites the elements" of his condonation claim. Id. (quoting Iqbal, 556 U.S. at 678). "[G]eneral averments of an unconstitutional policy or custom" paired with "particular examples" are sufficient to survive dismissal. Jones, 2015 WL 4509871, at *17.

In Owens, the plaintiff pleaded that "reported and unreported cases" established that BPD had a custom, policy, or practice of "suppressing exculpatory evidence in criminal prosecutions" and that "numerous successful motions" challenging such

suppressions demonstrated that BPD knew of the evidence suppression and condoned it. Id. at 402–03. The Fourth Circuit held that the cases and motions were factual allegations supporting the plaintiff's condonation claim. Id. The court further held that the plaintiff's assertion that BPD withheld such evidence on "multiple occasions could establish a 'persistent and widespread' pattern of practice." Id.

Here, Lucero alleges that BPD officers employed a "widespread custom" of only enforcing the Policy "against those who oppose the Circus." (Am. Compl. ¶ 21). He states that "[t]he BPD, through its officers, engaged in a Monell custom of enforcing the Policy on the basis of content and/or viewpoint of speech." (Id. ¶ 50). Assuming that Officer Early's manner of enforcing the Policy was unconstitutional, nowhere in the Amended Complaint does Lucero allege "particular examples" of Officer Early's or other BPD officers' unconstitutional conduct. Jones, 2015 WL 4509871, at *17. The Amended Complaint merely pleads Lucero's interactions with Officer Early in April 2010. This "isolated and infrequent" incident is insufficient to state a Monell condonation claim. See Peters v. City of Mount Rainier, No. GJH-14-00955, 2014 WL 4855032, at *6 (D.Md. Sept. 29, 2014) (concluding that "three solitary examples" of arrests were "insufficient, as a matter of law, to demonstrate the existence of an official municipal custom or policy"). Put another way, the allegations in the Amended Complaint do not amount to a custom the "extent" of which is "widespread or flagrant" enough for a condonation claim. See Owens, 767 F.3d at 403 (quoting Spell, 824 F.2d at 1387).

To be sure, Lucero pleads that Officer Early "had a history of content-based enforcement dating back to 2004 or before." (Am. Compl. ¶ 23). In addition, Officer Early testified that in 2008 and 2009 "he enforced the policy against anti-Circus leafletters specifically because they are opposed to the Circus." (Id.). These allegations do not, however, provide "particular examples" of unconstitutional conduct. See Jones, 2015 WL 4509871, at *17.

In his Opposition to BPD's Motion, Lucero gives several examples of Officer Early and other BPD officers enforcing the Policy in a discriminatory manner, which may constitute a pattern or practice of violating Circus leafletters' constitutional rights. For example, Lucero states that BPD officers permitted an individual distributing leaflets unrelated to the Circus to stand in a restricted area, while BPD officers harassed Circus leafletters for small violations, such as a foot crossing into a restricted area. Like his Monell claim premised on the acts of policymakers, these factual allegations do not appear in the Amended Complaint. The Court will, therefore, grant Lucero leave to amend his Amended Complaint to cure this deficiency.

In short, the Court concludes that Lucero fails to adequately allege a widespread custom or practice of discriminatory enforcement of the Policy. Accordingly, the Court will grant BPD's Motion as to Count 3 and permit Lucero to amend the Amended Complaint.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant the City's Motion to Dismiss Count Two of the Amended Complaint (ECF No. 54) and BPD's Motion to Dismiss Amended Complaint (ECF No. 59).  The Court will dismiss Counts 2 and 3 without prejudice and grant Lucero leave to file a second amended complaint if he so chooses.    A separate order follows.

Entered this 11th day of September, 2018

_____/s/_____
George L. Russell, III
United States District Judge
