UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KENNETH LUCERO**<br><br>Plaintiff<br>v.<br><br>**WAYNE EARLY,** *et al.*<br><br>Defendants | Case No.:<br>**13-cv-01036 (GLR)** |

**PLAINTIFF'S OPPOSITION TO**
*[Baltimore City's] Motion to Dismiss Count Two
of the Second Amended Complaint* [ECF 79]

Kenneth Lucero, Plaintiff, by and through counsel, Sean R. Day, opposes the City of Baltimore's *Motion to Dismiss Count Two of the Second Amended Complaint* [ECF 79].

## ISSUE/SUMMARY

The Plaintiff has sufficiently pled that the City is responsible for speech restrictions that were a moving force behind the constitutional violations against the Plaintiff.

## SUMMARY OF RESPONSES TO POINTS

The City's Motion states each of the following six points; responses follow the City's assertions. A fuller discussion follows.

1. *Plaintiff Kenneth Lucero ("Plaintiff"), pursuant to 42 U.S.C. § 1983, sues the City, the Baltimore Police Department ("BPD"), an agency of the State of Maryland, and Baltimore Police Department Officer Wayne A. Early ("Officer Early"), an employee of the State of Maryland who was not subject to the City's supervision or control.*

Whether Early was subject to the City's supervision or control is irrelevant. Early was implementing/enforcing the City's speech restrictions.


2. *Plaintiff's claim arises from Officer Early's arrest of Plaintiff and enforcement of a time, place and manner regulation of protected activity on the sidewalk in the 200 block of West Baltimore Street, Baltimore, Maryland during the period of April 8-10 & 17, 2010.*

This partially summarizes the Plaintiff's claims and does not appear to be a point in support of the motion to dismiss.

3. *The City is not liable under 42 U.S.C. § 1983 for Officer's Early arrest of Plaintiff.*

The City is liable for Early's enforcement of the ***City's*** speech restrictions, which caused the arrest and caused Lucero not to leaflet at the 2010 Circus on other occasions.

4. *Under Maryland law, the City lacks the legal authority to set policy for the BPD and its officers.*

The claim against the City relates to the City's own actions (and omissions). It is irrelevant whether the City has authority to set policy for the BPD or BPD officers.

5. *No City Attorney is responsible under Maryland law for establishing final policy effecting the BPD's performance of the duties and responsibilities assigned to it by law.*

The leaders in the City's Law Office were policymakers with authority-in-fact as previously determined by this Court. Furthermore, for the 2010 Circus, the City had formal notice of the Policy through prior

litigation, and with deliberate indifference failed to stop the continuation of the restrictions for 2010. In the second alternative, the implementation of the restrictions each year 2004 through 2010 constituted a municipal custom.

6.  *The recommendations made by City Attorneys were subject to review by the Police Commissioner who holds final decision-making authority over all policies applicable to BPD officers.*

The claims against the City relate to the City's speech restrictions, not the BPD's co-adoption of the same restrictions.

## SUMMARY OF FACTS RELEVANT TO THE ISSUE

The First Mariner Arena (now the Royal Farms Arena) ("Arena") is owned by the City and leased to various third parties, including to the [Ringling] Circus for annual, 12-day runs (until the Circus ended in 2017). (2AC ¶¶ 10-12.)

Prior to the 2004 Circus, the City and Baltimore City Police Department ("BPD") jointly formulated and implemented a policy ("Policy") restricting the use of the sidewalk and plaza around the Arena by those engaged in protest activities, including leafletting, against the Circus. (2AC ¶ 14.) The Policy directed that (anti-Circus) protesters occupying the prohibited areas would be given two warnings and, if failing to comply, arrested. (2AC ¶ 23.)

The Policy was created by Chief City Solicitor Linda Barclay, who worked with "BPD Command Staff" to formulate the Policy. (2AC ¶ 28.) The Policy was then distributed by email to the City Solicitor and the BPD Commissioner as well as to BPD officers in charge of security (including Defendant Early) at the Circus. (2AC ¶¶ 27-30.) This continued annually for each run of the Circus at the Arena through year 2010. (2AC ¶ 24.)

Persons involved for the City and BPD were policymakers. (2AC ¶¶ 27-28.)

At her deposition, Chief Solicitor Barclay repeatedly referred to the Policy as a municipal "policy." (2AC ¶ 31.) The Policy was not "legal advice" but designed and implemented as "clear municipal policy." (2AC ¶¶ 23 and 33, citing *Ross v. Early*, 899 F. Supp. 2d 415, 419 (D. Md. 2012).)

The face of the Policy referred to it as a joint collaboration of the City's Law Office and the BPD. (2AC ¶ 32.) It was a joint Policy of the City and BPD. (2AC ¶ 33, citing *Ross III*, 899 F. Supp. 2d at 419.)

Prior to the implementation and enforcement of the Policy during the 2010 Circus, the City and BPD entities and all official policymakers had formal notice of the Policy through service of process in *Ross v. Early*, 09-CV-03255. (2AC ¶¶ 34-35.) The City and BPD thereafter, through deliberate action or deliberate indifference and inaction, continued the Policy for 2010. (2AC ¶ 36.)

During the 2010 Circus, on four occasions Kenneth Lucero could not leaflet within a restricted area as a result of the Policy; on another occasion, Defendant Early arrested Mr. Lucero for leafletting in the restricted area in violation of the Policy. (2AC ¶¶ 55-56.)

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6),

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The pleading requirement is more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," but less than "detailed factual allegations." *Id.*

Defendants have a higher burden against a civil rights complaint:

> [W]hen [] a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, [the court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (internal quotation marks omitted); *Rice v. Howard County Govt.*, 2017 U.S. Dist. LEXIS 121255, at *12 (D. Md. 2017).

# ARGUMENT

## I. The City Is Responsible for Unconstitutional Restrictions It Imposes on Speech

The City suggests that it has no power to regulate its sidewalks, including the Sidewalk and Plaza around the City-owned Arena, such that any attempt to do so here was void. (City Memo. p. 8.) Without citation to any relevant authority, the City argues that it is not responsible under § 1983 for actual deprivations of constitutional rights if the City was acting beyond its enumerated municipal powers.

The City relies upon inapplicable cases where a public body acted in violation of notice and open meetings laws. *See, e.g., WSG Holdings, LLC v. Bowie*, 429 Md. 598, 630, 57 A.3d 463, 483 (2012).

The City here was exercising traditional governmental power. The City Charter gives the City general police powers so long as the exercise thereof does not "conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner." City Charter, Art. I § 27. The Policy here was a joint policy with the BPD and therefore was inherently consistent with, and could not have conflicted with, the BPD's powers. The City also has the power "to regulate the use of streets and public

ways." Art. II, § 34(d). The City additionally has full general powers of a local government:

> The Mayor and City Council of Baltimore shall have full power and authority to exercise all of the powers heretofore or hereafter granted to it by the Constitution of Maryland or by any Public General or Public Local Laws of the State of Maryland the Constitution of Maryland or by any Public General or Public Local Laws of the State of Maryland.

Art. II, Preamble. The City has enacted ordinances regarding use of public spaces including sidewalks. *See, e.g.,* Baltimore City Code Art. 19 § 25-1 (this section is within a broad assortment of ordinances enacted by the City under a section entitled "Police Ordinances").

The City has in other litigated cases exercised power over public space for speech activities. *See, e.g., Cunningham v. Flowers*, 218 F.R.D. 453 (D. Md. 2003) (adding, without opposition, City as a defendant in challenge to speech regulations, guidelines, and decisions regarding street performers at Inner Harbor); *Iskcon, Inc. v. Schmidt*, 523 F. Supp. 1303, 1307 (D. Md. 1981) (summary judgment granted against City for ordinance regulating solicitation at Inner Harbor). The City has exercised other powers to regulate speech. *See, e.g., Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 879 F.3d 101 (4th Cir.

2018) (imposing speech requirements on pregnancy centers); *Anheuser-Busch v. Schmoke*, 101 F.3d 325 (4th Cir. 1996) (regulating outdoor alcohol advertising); *Penn Advertising v. Mayor & City Council*, 63 F.3d 1318 (4th Cir. 1995) (regulating outdoor cigarette advertising); *Metromedia, Inc. v. Baltimore*, 538 F. Supp. 1183 (D. Md. 1982) (regulating advertising signs on and off premises).

Even if the City abused or exceeded its powers, for § 1983 liability all that is required is "state action," including abused power. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S. Ct. 2744, 2749 (1982).

## II. The Policy Is Attributable to the City

The Policy is attributable to the City (a) as an action of policymakers, (b) through the deliberate indifference of the City, and/or (c) as a condoned custom.

Ultimately the issue here, however worded or categorized, is about "fairly attributing fault" to a municipality, either through a policymaker's decisions or through constructive notice and inaction. *Spell v. McDaniel*, 824 F.2d 1380, 1386-87 (4th Cir. 1987) (elements on municipal liability are

"attribution and causation"). Here, at a minimum, there were speech restrictions imposed every year at the Circus from 2004 through 2010; the City and BPD had formal notice of the restrictions prior to 2010; the City and BPD continued the restrictions for 2010; as a result, Mr. Lucero was restricted from engaging in free speech including an arrest. In 2010, if not before, fault is fairly attributable to the City and BPD.

### A. The Policy Was Implemented by City Policymakers

The Policy was created and implemented by delegated City policymakers (Chief Solicitor and City Solicitor) every year from 2004 through 2010. (2AC ¶¶ 27-28.)[1] This Court correctly held (on summary judgment) that the Policy was, as of the 2008 and 2009 Circus runs, not merely "legal advice" but "clear, municipal policy" of the City and BPD. *Ross v. Early ("Ross III")*, 899 F. Supp. 2d 415, 419 (D. Md. 2012).[2]

---

[1] "These assertions, when taken together with other facts, could make it plausible that BPD and City officials with final policymaking authority implemented the Policy." (Court Memo. p. 17 ECF 68.)

[2] This is not cited for collateral estoppel but as persuasive authority against a motion to dismiss.
"The most critical factor is not the practical finality of an official's acts and edicts, but their 'policy' nature. … The question is one of authority-

Additionally for this case, prior to 2010 all the City's policymakers had formal notice of the Policy through service of process in *Ross v. Early* (09-CV-03255) to which the City responded prior to 2010. (2AC ¶¶ 34-35.) The City then continued the Policy for the 2010 Circus. (2AC ¶ 36.)³ A policymaker's single, informal, *ad hoc* decision can be sufficient to establish *Monell* liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1298-99 (1986); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

---

in-fact. A municipal governing body may not avoid attribution of policy to itself simply by officially retaining unexercised ultimate authority to countermand a policy or to discipline or discharge the policymaker." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) (internal citations and quotation marks omitted). "[M]unicipal 'policy' … may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Id.* at 1385.

In a prior reply, the City argued that the Court's decision in *Ross* was irrelevant because in *Ross* the City stipulated (in that case only) that the Policy was a *Monell* policy; but the stipulation occurred **after** the Court's decision.

³   In the event it is not deemed a municipal policy as previously held in *Ross*, at this pleading stage it is not known precisely what decisions were made or who made them, but the Policy was implemented for the 2010 Circus after all policymakers were actually or constructively aware of it. (2AC ¶ 29.) If necessary, the Plaintiff reasonably expects to establish that a policymaker made a decision about the Policy after the City was served with process in *Ross*.

PLAINTIFF'S OPPOSITION TO CITY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT • 13-CV-1036 GLR

PAGE 12 OF 17

### B. The City Was Deliberately Indifferent

The City received actual or constructive notice of the restrictions through service of process in *Ross*. (2AC ¶¶ 34-35.) "[C]onstructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). The City then either chose to continue the restrictions for 2010, or with deliberate indifference failed to discontinue the restrictions. (2AC ¶ 72.) "[A] municipality may be held liable ... through an omission ... that manifests deliberate indifference to the rights of citizens." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation and quotation marks omitted).

### C. The Policy Constituted a Condoned Custom

If the Policy was not a *Monell* policy, it was a custom of the City. The restrictions were implemented for each year's run of the Circus for the seven years from 2004 through 2010. The City had actual or constructive knowledge of the restrictions prior to 2010 and the

restrictions continued for the 2010 Circus. This is sufficient to establish municipal fault for a custom. "[F]ault for a violation resulting from condoned custom can [] be ascribed when a pattern of comparable practices has become actually or constructively known to responsible policymakers." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). "Municipal liability may [] attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). In *Stauber v. City of New York*, 2004 U.S. Dist. LEXIS 13350, at *59 (S.D.N.Y. 2004), the use of pens at a proportionately low number of protests was sufficient to establish a municipal custom.

### III. The City Is Liable for Its Own Acts (or Omissions) That Caused the Violations

The City inserts a red herring by arguing that the City is not responsible for the BPD. Mr. Lucero does not contend that the City controls the BPD or is responsible for the BPD. Mr. Lucero contends that the City is responsible for its own actions.

The City relies upon cases having no application to the facts here:

*Johnson v. Mayor & City Council*, 233 Md. App. 43, 161 A.3d 95 (2017) (judgment creditor of BPD could not execute judgment against City); *Jackson v. Pena*, 28 F. Supp. 3d 423 (D. Md. 2014) (claim of excessive force by BPD officer could not be asserted against the City); *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639 (D. Md. 2014) (excessive force claim); *Houghton v. Forrest*, 412 Md. 578, 989 A.2d 223 (2010) (discussing liabilities and immunities under the State and local government tort claims acts); *Mayor & City Council v. Clark*, 404 Md. 13, 944 A.2d 1122 (2008) (former BPD police commissioner sued City for wrongful termination); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546 (D. Md. 2003) (unlawful search and excessive force claims); *Clea v. Baltimore*, 312 Md. 662, 541 A.2d 1303 (1988) (City does not have vicarious liability for tortious acts of BPD officers).

None of the cases cited address the situation here, which is directed at the actions of the City. The **City's** speech restrictions caused Mr. Lucero not to be able to use the restricted areas on four occasions, and caused his arrest on a fifth occasion. (2AC ¶¶ 55-56.) That a BPD officer (performing city police functions) was in this case a tool used to enforce the restrictions is irrelevant to the City's liability; the City's acts were "a moving force" and

"played a part" in the violations here. *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016); *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989) (question is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (municipal liability is established where "policy [], when enforced, causes a constitutional deprivation").

## **CONCLUSION**

For these reasons and others that may appear on the record or be argued at a hearing, the Court should deny the motion.

Respectfully submitted,

/s/Sean R. Day/s/
Sean R. Day
7474 Greenway Ctr Dr Ste 150
Greenbelt, MD 20770-3524
301.220.2270
301.220.2441 fax
*Sean@DayInCourt.Net*
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served this filing date upon all parties, through the ECF filing system. All parties are represented by counsel who are registered ECF users and have entered appearances in this case.

/s/Sean R. Day/s/
Sean R. Day